No._ _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

vs.

Nazariy Kmet, a/k/a "Naz"
Bogdan Kmet, a/k/a "Bobby"
Rostislav Kmet, a/k/a "Rosti"
Life Support Corporation

### INDICTMENT

Counts
18 U.S.C. § 1349 (conspiracy to commit health care fraud - 1 count)
18 U.S.C. § 1343 (wire fraud – 2 counts)
18 U.S.C. § 1035 (false statements in connection with healthcare matters – 2 counts)
42 U.S.C. § 1320a-7b(b)(2) (kickback payments – 3 counts)
18 U.S.C. § 1956 (money laundering – 1 count)
18 U.S.C. § 1957 (money laundering – 3 counts)
18 U.S.C. § 2 (aiding and abetting)

A true bill.

_____
Foreman

Filed in open court this _____day,
Of _____A.D. 20_____

_____
Clerk

Bail, $_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 14-_____ |
| v. | : | DATE FILED: _____ |
| NAZARIY KMET, | : | VIOLATIONS: |
| a/k/a "Naz," | | 18 U.S.C. § 1349 (conspiracy to |
| BOGDAN KMET, | : | commit health care fraud – 1 count) |
| a/k/a "Bobby," | | 18 U.S.C. § 1343 |
| ROSTISLAV KMET, | : | (wire fraud – 2 counts) |
| a/k/a "Rosti," | | 18 U.S.C. § 1035 (false statements in |
| LIFE SUPPORT CORPORATION | : | connection with health care matters |
| | | – 2 counts) |
| | : | 42 U.S.C. § 1320a-7b(b)(2) |
| | | (kickback payments – 3 counts) |
| | : | 18 U.S.C. § 1956 (money |
| | | laundering – 1 count) |
| | : | 18 U.S.C. § 1957 (money |
| | | laundering – 3 counts) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |
| | | Notices of forfeiture |

# I N D I C T M E N T

## COUNT ONE

### (Conspiracy to Commit Health Care Fraud)

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

**A.**     **The Defendants**

1.     Defendant LIFE SUPPORT CORPORATION ("LIFE SUPPORT") with a business address of 132 Parry Road, Warminster PA 18974, was incorporated in the Commonwealth of Pennsylvania on or about March 8, 2010.

1

2.       Defendant LIFE SUPPORT initially operated from 111 Buck Road, Unit 600 Suite C in Huntingdon Valley, PA, and later moved its operations to 1325-A O'Reilly Road, in Feasterville PA.

3.       Defendant LIFE SUPPORT operated five ambulances, in addition to occasionally using at least one ambulance owned by another company.

4.       Defendant LIFE SUPPORT was owned by its president, defendant NAZARIY KMET, a/k/a "Naz," and its vice-president, defendant BOGDAN KMET, a/k/a "Bobby," the brother of NAZARIY KMET.  Defendant NAZARIY KMET submitted claims to Medicare for LIFE SUPPORT and managed daily operations at LIFE SUPPORT.  Defendant ROSTISLAV KMET, a/k/a "Rosti," the cousin of defendants NAZARIY and BOGDAN KMET, transported patients for LIFE SUPPORT and at times acted as a dispatcher for LIFE SUPPORT.  Defendant BOGDAN KMET also transported patients for LIFE SUPPORT.  Defendant NAZARIY KMET was responsible for hiring LIFE SUPPORT ambulance drivers and emergency medical technicians.

**B.**    **The Medicare Program**

5.       Medicare was a federal health insurance program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services.  Medicare helped to pay for reasonable and medically necessary medical services for people aged 65 and older and some persons under 65 who were blind or disabled.  Medicare was divided into several parts, including Part B, outpatient services.

6.       Under Medicare Part B, payment was made to providers of outpatient services.  Such providers included ambulance transportation providers.

2

7.     CMS contracted with private insurance companies under Part B to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers and suppliers.  Once contracted to process Medicare Part B claims, these private insurance companies were known as Medicare Administrative Contractors ("MACs").  CMS contracted with Highmark Medicare Services ("Highmark"), now Novitas Solutions (Highmark and Novitas Solutions are collectively referred to as "Novitas" in this indictment), to be the MAC to process and pay Medicare Part B claims in the Commonwealth of Pennsylvania.

8.     Novitas was required to process applications from medical providers seeking to enroll in the Medicare program.  Once the application was reviewed and approved, a provider was enrolled and issued a unique provider number.  The provider number was required on all claims submitted by the provider to the carrier for payment.

9.     Upon enrollment, providers were issued a provider manual that generally described the requirements to participate as a provider in the Medicare program.  Providers also periodically received newsletters advising them of additional requirements for participation and instructions concerning which services were covered or not covered by Medicare and the prerequisites for coverage.

C.     **Payment for Medicare Claims to Providers**

10.     Under regulations promulgated by Medicare, providers and suppliers of Medicare Part B services were required to submit, within one year from the date of service, claims to the MACs on behalf of Medicare beneficiaries.  During this period, providers could file their Medicare Part B claims either electronically or in paper form.

3

11.     When a provider submitted a claim for payment to Medicare for ambulance transport services, the claim was required to include information such as the beneficiary's name, address, unique identification number, the date and place of service, and the type of services rendered, which were identified by individual codes.

12.     Providers were required to certify, among other things, that they agreed to abide by the Medicare laws, regulations, and program instructions that apply to the supplier and that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including but not limited to the Federal anti-kickback statute). The provider number was included as a part of each submission.

13.     Medicare paid for regularly scheduled, non-emergency transports to certain locations, including dialysis centers, only if either: (a) the beneficiary was bed-confined and it was documented that the beneficiary's condition was such that other methods of transportation were contraindicated (*i.e.*, bed confinement alone was not itself a sufficient basis for such transportation); or (b) the beneficiary's medical condition, regardless of bed-confinement, was such that transportation by ambulance was medically required. For a beneficiary to be bed-confined, the following criteria were required to be met: (1) the beneficiary was unable to get up from bed without assistance; (2) the beneficiary was unable to "ambulate," and (3) the beneficiary was unable to sit in a chair or wheelchair.

14.     In all cases, CMS required that appropriate documentation be kept on file and, upon request, presented to the carrier. For example, ambulance service providers were required to create a record for each transport, generally known as a "trip sheet," which

4

memorialized the attendant's observations about the patient's condition that demonstrated that ambulance transport was medically necessary. Medicare also required ambulance providers to obtain, prior to transport, a physician's written order certifying the need for an ambulance for scheduled non-emergency transports. A physician's order was referred to as a Physician's Medical Necessity Certification ("PMNC") or Physician Certification Statement ("PCS"). CMS made clear that neither the presence nor absence of a signed physician's order for an ambulance transport proved (or disproved) whether the transport was medically necessary. The ambulance service had to meet all program coverage criteria in order for payment to be made.

15.     Medicare reimbursement to providers was made by either an electronic funds transfer ("EFT"), automated clearinghouse ("ACH") transfers, or check payable to the provider and delivered by U.S. mail. LIFE SUPPORT received its payments from Medicare by EFT and ACH.

16.     EFTs and ACHs to LIFE SUPPORT were made by Novitas, on behalf of Medicare, to a TD Bank account that was titled to defendant LIFE SUPPORT and which listed defendants NAZARIY KMET and BOGDAN KMET as the authorized signatories.

### The Conspiracy

17.     From in or about May 2010 through in or about December 2012, in the Eastern District of Pennsylvania and elsewhere, defendants

**NAZARIY KMET,**
a/k/a "Naz,"
**BOGDAN KMET,**
a/k/a "Bobby,"
**ROSTISLAV KMET,**
a/k/a "Rosti,"
and
**LIFE SUPPORT CORPORATION**

5

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and willfully execute a scheme to defraud the Medicare health benefit program, and

to obtain money and property of Medicare by means of false and fraudulent pretenses,

representations, and promises, in connection with the delivery of and payment for health care

benefits, items and services, by submitting and causing to be submitted fraudulent health care

insurance claims, in violation of Title 18, United States Code, Section 1347.

## Manner and Means

18.     It was part of the conspiracy that defendants NAZARIY KMET,

BOGDAN KMET, ROSTISLAV KMET and LIFE SUPPORT transported by ambulance, and

directed other LIFE SUPPORT employees to transport by ambulance, patients who could walk

or be safely transported by other means, falsely representing to Medicare that these patients

required transportation by ambulance.

19.     It was further part of the conspiracy to target and recruit patients who

attended dialysis treatment, which is typically required three times per week, thereby allowing

LIFE SUPPORT to bill extensively for these patients.

20.     Ambulatory patients were sometimes directed to get onto a stretcher when

the patients were able to walk or be moved by wheelchair.   LIFE SUPPORT would sometimes

transport patients in the front of vehicles, transport more than one patient at a time, and transport

patients in personal vehicles.  Some LIFE SUPPORT employees were directed to use template

narratives for their trip sheets that concealed that patients were able to walk or could have been

transported safely by means other than ambulance.

21.     Defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET,

and LIFE SUPPORT submitted, and caused to be submitted, fraudulent claims to Medicare for

6

medically unnecessary ambulance services.

22.    Defendants BOGDAN KMET and ROSTISLAV KMET, and LIFE SUPPORT employees acting at their direction, falsified "trip sheets" by causing those documents to reflect that patients needed to be transported by stretcher, or by omitting information that would show that patients were able to walk. In fact, patients often walked to the ambulance and no medical monitoring of any kind was performed during the trip.

23.    Defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET, and LIFE SUPPORT paid and facilitated the payment of illegal kickbacks to patients, which ranged from $200 to $500 per month on average, to induce the patients to be transported by LIFE SUPPORT, even though transport by ambulance was not medically necessary.

24.    Defendants NAZARIY and BOGDAN KMET negotiated with patients and with third parties to "purchase" patients who were willing, for the payment of illegal kickbacks, to ride with LIFE SUPPORT.

25.    Defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET, and LIFE SUPPORT created the appearance of a legitimate medical transport business while actually running mechanically unsound and unsafe ambulances without the required medical equipment on board. LIFE SUPPORT ambulances failed to pass Pennsylvania state inspection for failing to have the proper life-saving equipment on board.

26.    Defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET, and LIFE SUPPORT provided patients completely free ambulance transport in order to induce them to use LIFE SUPPORT. LIFE SUPPORT did not collect co-payments from patients even though it was required to do so by Medicare.

7

27.     As a result of this fraudulent scheme, defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET, and LIFE SUPPORT submitted, and caused to be submitted, more than $6 million in fraudulent claims to Medicare and caused Medicare to incur losses of more than $1.9 million.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendants

**NAZARIY KMET**
a/k/a "Naz,"
**BOGDAN KMET**
a/k/a "Bobby,"
**ROSTISLAV KMET**
a/k/a "Rosti,"
and
**LIFE SUPPORT CORPORATION**

committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.     In or about May 2010, defendants NAZARIY KMET and BOGDAN KMET secured a Medicare provider number for LIFE SUPPORT, by submitting an application in which they agreed that they and LIFE SUPPORT would abide by all Medicare laws, regulations, and program instructions that applied to ambulance companies.  In the application, defendants NAZARIY KMET and BOGDAN KMET certified that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions, including the anti-kickback statute.

2.      From in or around May 2010 through in or around December 2012, defendant NAZARIY KMET submitted claims to Medicare for LIFE SUPPORT for medically unnecessary ambulance transport services.

3.      From in or around May 2010 through in or around December 2012, defendant BOGDAN KMET worked as a LIFE SUPPORT ambulance driver.  Defendant BOGDAN KMET transported ambulatory patients and falsified "trip sheets" related to patient transports.

4.      From in or around May 2010 through in or around December 2012, defendant ROSTISLAV KMET worked as a LIFE SUPPORT emergency medical technician. Defendant ROSTISLAV KMET transported ambulatory patients and falsified "trip sheets" related to patient transports.

5.      From in or around May 2010 through in or around December 2012, defendants NAZARIY KMET, BOGDAN KMET, and ROSTISLAV KMET facilitated the payment of illegal kickbacks to patients by giving specified patients cash.

6.      From in or around May 2010 through in or around December 2012, defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET, and LIFE SUPPORT caused fraudulent claims to be submitted to Medicare for each of the patients identified by initials below, among others, on the approximate dates listed below, among others, for ambulance services that were not medically necessary:

9

| Patient Initials | Approximate Date of Transportation | Approximate Claim Amount | Approximate Dates of Claim Submission | Approximate Payment Date | Health Care Benefit Program |
|---|---|---|---|---|---|
| R.H. | 6/24/2011 | $1,011 | 7/7/2011 | 7/21/2011 | Medicare |
| A.W. | 4/12/2012 | $1,020 | 4/17/2012 and 5/2/2012 | 5/16/2012 | Medicare |
| W.M. | 5/30/2012 | $1,140 | 6/7/2012 | 9/6/2011 | Medicare |
| M.R. | 7/14/2012 | $960 | 7/20/2012 | 8/3/2012 | Medicare |
| Z.W. | 8/28/2012 | $1,060 | 9/7/2012 | 9/21/2012 | Medicare |
| J.W. | 10/16/2012 | $1,020 | 10/25/2012 | 11/9/2012 | Medicare |
| L.R. | 10/16/2012 | $1,000 | 10/25/2012 | 11/9/2012 | Medicare |
| S.S. | 10/16/2012 | $1,000 | 10/25/2012 | 11/9/2012 | Medicare |

All in violation of Title 18, United States Code, Section 1349.

10

## COUNTS TWO AND THREE

### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

### Background

1.     Paragraphs 1-16 and 18-27 of Count One are incorporated here.

### The Scheme to Defraud

2.     From in or about May 2010 through in or about December 2012, in the

Eastern District of Pennsylvania and elsewhere, defendants

**NAZARIY KMET,**
a/k/a "Naz,"
**BOGDAN KMET,**
a/k/a "Bobby,"
**ROSTISLAV KMET,**
a/k/a "Rosti,"
**and**
**LIFE SUPPORT CORPORATION**

devised and intended to devise a scheme to defraud Medicare, and to obtain money and property

from that health care benefit program by means of false and fraudulent pretenses,

representations, and promises.

### Manner and Means

It was part of the scheme that:

3.     Defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET,

and LIFE SUPPORT engaged in conduct described in the "manner and means" section

(paragraphs 18 through 27) of Count One of this indictment.

11

4.      Defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET, and LIFE SUPPORT, working in Pennsylvania, caused fraudulent claims for reimbursement from health care benefit programs to be submitted to various claims processors, including Novitas, a company located in Camp Hill, Pennsylvania, which initially received and processed the electronic claims submissions at a facility in South Carolina.

5.      By causing fraudulent claims to be submitted to Novitas, defendants NAZARIY KMET, BOGDAN KMET, ROSTISLAV KMET, and LIFE SUPPORT caused funds to be transferred, by electronic means through a transaction known as an Automated Clearing House transfer ("ACH") from U.S. Bank, located in Minneapolis, Minnesota, which processed the transaction through servers located in St. Paul, MN and Olathe, KS, and transmitted them to T.D. Bank, which then processed the claims in Lewiston, ME, that were accessed through an account opened in the name of LIFE SUPPORT CORPORATION in the Eastern District of Pennsylvania.

6.      On or about each of the dates listed below, in the Eastern District of Pennsylvania and elsewhere, defendants

**NAZARIY KMET,**
a/k/a "Naz,"
**BOGDAN KMET,**
a/k/a "Bobby,"
**ROSTISLAV KMET,**
a/k/a "Rosti,"
**and**
**LIFE SUPPORT CORPORATION**

for the purpose of executing the scheme described above, aiding and abetting, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, from

12

U.S. Bank in Minneapolis, MN, which processed the transaction through servers located in St.

Paul MN and Olathe KS, and transmitted them to a T.D. Bank server located in Lewiston, ME,

the signals and sounds described below, specifically the transmission of an ACH transfer, each

transmission constituting a separate count:

| Count | Patients and Approximate Transport Date | Approximate Wire Transmission Date (on or about) | Health Care Benefit Program | Total Amount Involved in Transaction |
|---|---|---|---|---|
| 2 | A.W. April 12, 2012 | May 16, 2012 | Medicare | $72,806.18 |
| 3 | J.W., L.R., and S.S. October 16, 2012 | November 9, 2012 | Medicare | $43,735.61 |

In violation of Title 18, United States Code, Sections 1343 and 2.

13

## COUNTS FOUR AND FIVE

### (False Statements Relating to Health Care Matters)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

2.      From in or about May 2010 through in or about December 2012, in the Eastern District of Pennsylvania and elsewhere, defendants

**NAZARIY KMET**
**and**
**LIFE SUPPORT CORPORATION**

in matters involving the health care benefit programs listed below, falsified, concealed, and covered up, and aided and abetted the falsification, concealment, and covering up, by trick, scheme, and device, a material fact in connection with the delivery of and payment for health care benefits, items, and services, in that the defendants created and caused to be created false documents, that is "trip sheets," for ambulance transportation provided to the patient identified by initials below, on the approximate dates listed below (each false statement constituting a separate count of this indictment), that concealed and falsely described the true condition of the individual who was transported by ambulance when, in fact, ambulance services were not medically necessary for the patient:

| Count | Patient Initials | Approximate Date of False Statement on Trip Sheet | Health Care Benefit Program |
|-------|------------------|---------------------------------------------------|----------------------------|
| 4 | L.R. | 10/16/2012 | Medicare |
| 5 | S.S. | 10/16/2012 | Medicare |

All in violation of Title 18, United States Code, Sections 1035 and 2.

14

## COUNT SIX

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

2.      On or about May 4, 2012, in the Eastern District of Pennsylvania and elsewhere, defendants

### ROSTISLAV KMET
### a/k/a "Rosti,"
### and
### LIFE SUPPORT CORPORATION

knowingly and willfully offered and paid, caused to be offered and paid, and aided and abetted the payment of, cash remuneration, that is a kickback in the amount of approximately $800, to patient T.C. to induce patient T.C. to be transported by LIFE SUPPORT ambulance even though transport by ambulance was not medically necessary.

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18, United States Code, Sections 2(a) and (b).

15

## COUNT SEVEN

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1-16 and 18-27 of Count One are incorporated here.

      2.     From on or about May 1, 2012 through on or about June 9, 2012, in the Eastern District of Pennsylvania and elsewhere, defendants

**NAZARIY KMET,**
**a/k/a "Naz,"**
**and**
**LIFE SUPPORT CORPORATION**

knowingly and willfully offered and paid, caused to be offered and paid, and aided and abetted the payment of, cash remuneration, that is a kickback in the approximate amount of $400, to patient T.C. to induce patient T.C. to be transported by LIFE SUPPORT ambulance even though transport by ambulance was not medically necessary.

      In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18, United States Code, Section 2.

## COUNT EIGHT

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1-16 and 18-27 of Count One are incorporated here.

2.    On exact dates unknown to the grand jury, but approximately between December 2011 and May 2012, in the Eastern District of Pennsylvania, defendants

**BOGDAN KMET,**
**a/k/a "Bobby,"**
**and**
**LIFE SUPPORT CORPORATION**

knowingly and willfully offered and paid,  caused to be offered and paid, and aided and abetted the payment of, cash remuneration, that is a kickback in the approximate amount of $300, to patient B.S. to induce patient B.S. to be transported by LIFE SUPPORT ambulance even though transport by ambulance was not medically necessary.

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18, United States Code, Section 2.

17

## COUNT NINE

### (Money Laundering )

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

2.      From on or about August 22, 2012 through on or about August 28, 2012, defendant NAZARIY KMET, acting as the president of LIFE SUPPORT, used at least two checks (Check Number 2054 for $1,000, dated August 22, 2012, and Check Number 2070 for $6,500, dated August 28, 2012) from the LIFE SUPPORT bank account at TD Bank for which NAZARIY KMET was an authorized signatory, to provide funds to an individual, K.T., for the purchase of a company called Capital Care Ambulance.

3.      The funds from the LIFE SUPPORT account were the proceeds of the conspiracy to commit health care charged in Count One, and the purchase of Capital Care was designed to further the conspiracy in that Capital Care ambulances were used by LIFE SUPPORT to transport ambulatory patients to and from dialysis, and fraudulent claims for that transportation were submitted to Medicare by LIFE SUPPORT and paid to LIFE SUPPORT.

4.      On or about the dates listed above as described above, in the Eastern District of Pennsylvania and elsewhere, defendants

**NAZARIY KMET,**
**a/k/a "Naz," and**
**LIFE SUPPORT CORPORATION**

knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct a financial transaction which in fact involved the proceeds of specified unlawful activity with the intent to promote the carrying

18

on of specified unlawful activity, that is conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

All in violation of Title 18, United States Code, Section 1956.

## COUNTS TEN THROUGH TWELVE

### (Money Laundering )

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1-16 and 18-27 of Count One are incorporated here.

2. On or about the dates listed below, in the Eastern District of Pennsylvania and elsewhere, defendants

### NAZARIY KMET,
**a/k/a "Naz"**
**and**
### LIFE SUPPORT CORPORATION

knowingly engaged in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, described more fully below, and such property was derived from a specified unlawful activity, that is conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349:

| Count | TD Bank Check # | Approximate Date of Check or Withdrawal | Amount | Transaction Description |
|-------|-----------------|------------------------------------------|--------|--------------------------|
| 10. | 6036722-5 Official Check Payable to Bristol Auto Mall | 10/5/2011 | $22,000 | Purchase of 2009 Lexus RX350, registered in the name of O.Y.<br><br>Funded by $22,000 withdrawal from TD Bank Account xxxx2190 on or about October 5, 2011, by NAZARIY KMET used to purchase $22,000 TD Bank Official Check 6036722-5<br><br>Preceded by $21,900 transfer from LIFE SUPPORT account xxxx3453 to TD Bank Account xxxx2190 on or about October 3, 2011 |

20

| Count | TD Bank Check # | Approximate Date of Check or Withdrawal | Amount | Transaction Description |
|---|---|---|---|---|
| 11. | 60403736-2 Official Check Payable to Elite Auto Brokers | 1/13/2012 | $36,500 | Purchase of 2008 Lexus LS 460, registered in the name of NAZARIY KMET and O.Y.<br><br>Funded by $36,500 withdrawal from TD Bank Account xxxx2190 on or about January 13, 2012,  by NAZARIY KMET used to purchase $36,500 TD Bank Official Check<br><br>Preceded by a $35,000 transfer made from LIFE SUPPORT bank account xxxx3453 to TD Bank Account xxxx2190 on or about December 30, 2011, and a $20,000 transfer made from LIFE SUPPORT bank account xxxx3453 to TD Bank Account xxxx2190 on or about January 11, 2012 |
| 12. | 51457661-8 Official Check payable to Sport Boats USA | 8/21/2012 | $10,200 | Purchase of Wellcraft 2600 Cruiser Boat for $10,700 on or about August 21, 2012, registered in the name of NAZARIY KMET<br><br>Funded by $10,200 withdrawal from TD Bank Account xxxx2190 on or about August 21, 2012,  by NAZARIY KMET used to purchase $10,200 TD Bank Official Check<br><br>Followed by $15,000 transfer from LIFE SUPPORT bank account xxxx3453 to TD Bank Account xxxx2190 on or about August 22, 2012 |

All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE #1

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violation of Title 18, United States Code, Section 1349 set forth in this indictment, defendants:

**NAZARIY KMET,**
a/k/a "Naz,"
**BOGDAN KMET,**
a/k/a "Bobby,"
**ROSTISLAV KMET,**
a/k/a "Rosti,"
**and**
**LIFE SUPPORT CORPORATION**

shall forfeit to the United States of America any property that constitutes or is derived from gross proceeds traceable to the commission of such offense(s), including, but not limited to:

    a. Money Judgment: A sum of money equal to at least approximately $1,912,526.32 in United States currency, for which the defendants are jointly and severally liable, and any other accounts and proceeds of these offenses;

    b. 2011 Infiniti, Vehicle Identification Number JN8AZ2NC4B9000076, PA tag HYH-9229, registered in the name of I.K., 2284 Sand Trap Road, Jamison, PA;

    c. 2013 Venture, Vehicle Identification Number 47GAA2728DB000047, PA tag XHD-8730, registered in the name of NAZARIY KMET, 2284 Sand Trap Road, Jamison, PA;

    d. 2009 Lexus, Vehicle Identification Number 2T2HK31U49C097847, PA tag HWN-8421, registered in the name of O.Y., 2284 Sand Trap Road, Jamison, PA;

    e. 2008 Lexus LS460, Vehicle Identification Number JTHBL46F485068818, PA tag HYV-5799, registered in the name of O.Y. and NAZARIY KMET, 2284 Sand Trap Road, Jamison, PA; and

22

      f.   2001 Wellcraft, Hull Identification Number WELAKB65D101, PA tag PA6367DJ, registered in the name of NAZARIY KMET, 2284 Sand Trap Road, Jamison, PA.

    2.   If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court; or

    d.   has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

    All pursuant to Title 18, United States Code, Section 982(a)(7).

23

## NOTICE OF FORFEITURE #2

**THE GRAND JURY FURTHER CHARGES THAT:**

   1. As a result of the violation of Title 18, United States Code, Sections 1956 and 1957 set forth in this indictment, defendants:

**NAZARIY KMET**
**and**
**LIFE SUPPORT CORPORATION**

shall forfeit to the United States of America any property, real or personal, involved in such offense, or any property traceable to such property.

   2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court; or

    d. has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

ZANE DAVID MEMEGER
United States Attorney